S. PREMEAUX v. SOCONY-VACUUM OIL COMPANY, INCORPORATED.

No. A-589. Decided January 23, 1946.
Rehearing overruled February 20, 1946.
(192 S. W., 2d Series, 138.)

*Marcus, Carrington & Weller,* and *Edward C. Carrington,* all of Beaumont, for petitioners.

The Court of Civil Appeals erred in reversing and rendering judgment as to the $500.00 paid as an additional sum for maintainance and care. Bonici v. Standard Oil Co., 103 Fed. (2d) 437; Central Vermont Ry. Co. v. White, 238 U. S. 507.

*Lipscomb & Lipscomb,* of Beaumont, *John W. Knox,* of New York, for respondent.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an admiralty case, which was instituted by Karis Premeaux, hereinafter referred to as the seaman, against Socony-Vacuum Oil Company, Inc., respondent, on two counts, (1) for cost of maintenance and cure, and (2), under the Jones Act (41 Stat. 1007, sec. 33, 46 USCA, sec. 688), for damages resulting from respondent's negligent failure to furnish him adequate maintenance and cure after it learned that he had become ill of tuberculosis at sea in the service of resepondent's ship. Before trial the seaman died, and his parents, as administrators of his estate, were substituted as plaintiffs. In addition to its denial of negligence, respondent pleaded a release from the seaman of all claims by him. Trial was to a jury, as a result of which the trial court entered judgment setting aside the release and awarding plaintiffs $550.00 for the cost of maintenance and cure and $3000.00 on the negligence issue. The Court of Civil Appeals, without passing on the release, reversed the judgment of the trial court and rendered judgment for respondent, on the ground that there was no evidence to support the issues of negligence and proximate cause and that there was insufficient evidence to support the claim for the cost of maintenance and cure. 187 S. W. (2d) 690.

Petitioners have in this court expressly abandoned their claim for the cost of maintenance and cure. The only questions before this Court are, therefore, the validity of the release and the liability, if any, for negligent failure to furnish maintenance and cure under the Jones Act.

In January, 1942, the seaman went abroard the SS Stanvac Calcutta as a messman. This ship was of Panamanian registry, and, under agreement of the parties, for the purposes of this case will be treated as an American vessel. Though still in his twenties, the seaman had followed the sea for some eight years. He had been examined and found physically fit before each of two previous voyages made by him for respondent. Before the voyage in question he was again examined, and was passed for service. After leaving the Texas coast, the ship carried oil in the Caribbean and South American areas. Duty on board the ship was rugged and nerve-racking, because of war and the presence of German submarines in the area. The seaman contracted a severe cold, which, without negligence on the part of respondent, developed into tuberculosis. The seaman's condition became progressively worse, and, apparently before the end of the seaman's contracted voyage, he was put ashore as an emergency measure at Aruba, N. W. I., for treatment. Upon his detachment from the ship the seaman requested a discharge from his captain, but he was refused the certificate. He was paid off that day (not before a U. S. Consul) for duties performed only to the date of his detachment, May 5, 1942. Probably he was not paid for services to the end of his contractual voyage. At Aruba the only medical advice he received was to the effect that if he would rest a year he would be all right. Whether or not he was advised of his tubercular condition is a matter of dispute. Nevertheless, after two weeks in bed at Aruba he was, at the instance of respondent, put aboard another ship (not under respondent's control) as a passenger for repatriation. He left Aruba on May 20, 1942, and the negligence submitted to the jury and relied upon here occurred on or after that date.

The events of the voyage to New York are set out in great detail in the opinion of the Court of Civil Appeals; and they will not be repeated here, because petitioners state in this Court that they do not rely on the events of the voyage as constituting negligence.

When the ship docked in New York the seaman was not assisted off the ship, but he went alone to the offices of respondent. He was ill, and had a temperature of 102 degrees. His stated purpose was, "to  obtain the rest of my money and they paid me off." He was given an hour's physical examination by respondent's doctors. The diagnosis was again tuberculosis, moderately advanced. Then followed a two-hour conference with a Mr. Ramsey, a 27-year-old claims investigator with two months' experience with respondent. Ramsey's story was that, at the seaman's suggestion, a lump sum settlement was made, in order

that the seaman could return to Texas for hospitalization. The jury affirmatively found that the seaman did not suggest such an agreement. Nevertheless, the seaman signed a release which purported to absolve respondent of any and all claims for illness, injuries, or any other type of claim arising out of the employment. The consideration paid to the seaman was $500.00 and a $25.00 bus ticket back to Texas; but the seaman contended that such money was received as wages and bonus. The adjuster and a notary, also an employee of respondent, testified that the seaman read the release and understood that it covered his illness, and that under it there would be no further payment to him by respondent.

At the conference with the seaman the adjuster had before him the recommendation of the company doctor, which was that the seaman should be placed under observation for pulmonary tuberculosis, and that he should receive hospitalization, X-ray treatment, and laboratory study. The adjustor stated, however, that he did not know that the seaman needed immediate hospitalization. The adjustor did not offer to place the seaman in a hospital, or even to furnish him with a certificate of discharge or other instrument which would have admitted the seaman to a marine hospital for gratuitous care. The seaman said no offer was made to give him any type of treatment.

Within fourteen hours after docking in New York the seaman was on a bus en route to Texas. After that four-day trip he was "laid up" at home. After three weeks in bed he made a week's voyage as a messman on an American-flag vessel, in order to obtain a discharge certificate, which would admit him to a marine hospital. That cruise terminated in Alabama. He returned home by bus, and went from there to the marine hospital at Galveston. Because they did not treat tubercular patients, he then went to a Chicago Hospital. After a week there he returned to Nederland, Texas; where he remained bedridden, occasionally attended by a doctor. In October, 1942, after he was "too far gone" for recovery, he was placed in the Jefferson County Tubercular Hospital, where he died.

Medical testimony was adduced that the seaman's disease was curable, if diagnosed and treated early enough; that early treatment is the most important factor; that immediate rest, ample diet, and treatment are necessary; that every day or week gained in getting such patient to bed and receiving treatment is vital; that a long period of activity, when the patient should be receiving treatment, would impair his chances of recovery.

Regarding matters relevant here, the jury found that respondent negligently failed to furnish the seaman with proper hospitalization and medical treatment after May 20, 1942; and that such negligence proximately caused personal injury to the seaman. Regarding the release, the jury found that it was executed freely and and without deception or coercion, but that the seaman did not understand that the document he signed was a release.

■ Chapter 18, Title 46, sec. 688, USCA, reads as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. Mar. 4, 1915, c. 153, sec. 20, 38 Stat. 1185; June 5, 1920, c. 250, sec. 33, 41 Stat. 1007."

Congress had the power to pass this Act (O'Donnell v. Great Lakes Dredge & Dock Co., 318 U. S. 36, 63 Sup. Ct. 488, 87 L. Ed. 596), and in view of the purpose of the Act it is to be liberally construed. Socony-Vacuum Oil Co. v. Smith, 305 U. S. 424, 59 Sup. Ct. 262, 83 L. Ed. 265. Suit under this Act may be filed in either the federal or state court, but the construction of the Act rests with the federal court. Where such a case is filed in a state court, local state laws, or rules relating to the execution of releases, may not be applied, but the rules laid down by Courts of Admiralty will control. Garrett v. Moore-McCormack Co., 317 U. S. 239, 63 Sup. Ct. 246, 87 L. Ed. 239. The rule is that the burden rests on the one who sets up a seaman's release to show that it was executed freely, without deception or coercion, *and that it was made by the seaman with a full understanding of his rights.* Garrett v. Moore-McCormack Co., supra. Or, as stated in Hume v. Moore-McCormack Lines, 121 Fed. (2d) 336, certiorari. den. 314 U. S. 684, 86 L. Ed. 547, 62 Sup. Ct. 188, the company had the burden to show that the release was "fairly made *and fully comprehended by the seaman.*"

■ The reason given for such holdings is that seamen are considered as wards of admiralty. They are considered to be persons generally improvident, necessitous, and ignorant of their own rights and privileges, and incapable of appreciating their value. Releases made by them are not treated as wholly invalid, but admiralty courts carefully scrutinize them to see that the seaman has not been overreached, and that the seaman has been treated with the same degree of fairness as is required between trustee and cestui-que trust and guardian and ward.

Here the seaman was a young man of little education. He did not have the advice of counsel, nor did he have a doctor of his own choosing; and he was ill. He recalled no discussion of a release, and stated that he did not understand that he had signed one. These are factors which have been before admiralty courts in dealing with releases, and in the great majority of such cases the releases executed under such circumstances have been set aside. Therefore, under the jury's finding, the trial court correctly set aside the release. Garrett v. Moore-McCormack Co., supra; Pacific Mail S. S. Co. v. Lucas, 258 U. S. 266, 66 L. Ed. 614, 42 Sup. Ct. 308; S. S. Standard, Bonici v. Standard Oil Co. of New Jersey, 103 Fed. (2d) 437, certiorari den. 308 U. S. 560, 84 L. Ed. 471, 60 Sup. Ct. 99; Hume v. Moore-McCormack Lines, supra; The Henry S. Grove, 22 Fed. (2d) 444; and see annotations, 17 Temple U. L. Q. 194 and 5 U. of Detroit L. J. 60.

■ We turn now to the question of negligence under this Act. The Act extends to seamen incurring personal injuries in the course of their employment (and to their representatives in case of death) the rights accorded by the federal law to railroad employees. The Federal Employers' Liability Act makes "negligence" a basis for recovery. 35 Stat. 65; 45 USCA sec. 51. Under this section, which makes applicable the Federal Employers' Liability Act, employees have a right of recovery for injuries resulting from negligence of their employer, its agents or employees. The gist of an action brought under the Jones Act is negligence, and the burden of establishing negligence rests upon the plaintiff. DeZon v. American President Lines, 318 U. S. 660, 87 L. Ed. 1065, 63 S. Ct. 814.

■ Under admiralty law the vessel and her owner are required to furnish a member of the crew maintenance and cure. The word "cure" means care, including nursing and hospitalization during such time as this duty continues. The duty arises out of contract. It does not rest on negligence or culpability on the part of the master, nor is it restricted to cases where the sea-

man's employment is the cause of the injury. Where a seaman is injured or becomes ill during a voyage (not considering misconduct cases, as this is not such a case), his employer owes him the duty to furnish reasonable care, including nursing and hospitalization during the voyage and for a reasonable time thereafter, and at least until it becomes apparent that the injury or illness could not be further benefited by the treatment. Calmar S. S. Corp. v. Taylor, 303 U. S. 525, 82 L. Ed. 993, 58 S. Ct. 651; The Bouker No. 2, 241 Fed. 831, certiorari den. 245 U. S. 647, 62 L. Ed. 529, 38 Sup. Ct. 9; The Point Fermin, 70 F. (2d) 602; Luksich v. Misetich, 140 Fed. (2d) 812, certiorari den. 322 U. S. 761, 88 L. Ed. 1589, 64 Sup. Ct. 1280; Martinez v. Matson, 97 Fed. (2d) 19; 1 Benedict on Admiralty (6th ed. 1940), sec. 83; 48 Amer. Jur. 119; 24 Va. L. R. 920; 38 Ill. L. R. 193; 22 Texas L. R. 239. And the failure to furnish such maintenance and cure, during such time as the duty exists, is a personal injury for which recovery may be had under the Jones Act. Cortes v. Baltimore Insular Line, 287 U. S. 367, 77 L. Ed. 368, 53 Sup. Ct. 173; Escandon v. Pan American Foreign Corp., 88 Fed. (2d) 276; Koehler v. Presque-Isle Trans. Co., Inc., 141 Fed. (2d) 490, certiorari den. 322 U. S. 764, 88 L. Ed. 1591, 64 Sup. Ct. 1288; 46 Harv. L. R. 712.

In Cortes v. Baltimore Insular Line, supra, opinion by Mr. Justice Cardozo, it is stated: "If the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, the recovery * * including not only necessary expenses, but also compensation for the hurt * *.

\* \* \* \* \* \* \*

"The failure to furnish cure is a personal injury actionable at the suit of the seaman during life, and at the suit of his personal representative now that he is dead."

■ The respondent has no assignment, either in this Court or in the Court of Civil Appeals, questioning the fact that the negligent injury, if any, was received "in the course of employment" as prescribed in the Jones Act. It not being contended otherwise, it is presumed that it was so received.

The reasons for imposing such a duty upon a shipowner are enumerated in the case of Harden v. Gordon, 11 Fed. Cas. No. 6047, as being the protection of seamen from the hazard of becoming ill in a foreign port and being abandoned; the inducement of masters and owners to protect the safety and health of seamen while in service; and the maintenance of a merchant

marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

The view of admiralty courts toward lump sum awards is expressed by Mr. Justice Stone, in Calmar S. S. Co. v. Taylor, supra, as follows:

"The practical inconvenience and the attendant danger to seamen in the application of a rule which would encourage the attempt by master or owner to determine in advance of any maintenance and cure, whether the illness was caused by the employment, are manifest.

\*  \*  \*  \*  \*  \*  \*

"The award of a lump sum in anticipation of the continuing need of maintenance and cure for life or an indefinite period, is without support in judicial decision. \* \* \* Furthermore, a duty imposed to safeguard the seaman from the danger of illness without succor, and to safeguard him, in case of illness, against the consequences of his improvidence, would hardly be performed by the payment of a lump sum to cover the cost of medical attendance during life."

In this case the jury had before it the seaman's testimony that when he went to respondent's office he was sick and had a temperature of 102 degrees. The adjustor knew he was sick. The adjustor had before him the company's own doctor's recommendation that the man receive hospitalization and treatment. The adjustor stated that he did not know immediate hospitalization was necessary. The medical testimony stressed the importance of immediate treatment. The jury had the seaman's testimony that no offer was made to hospitalize him, and no direct evidence was adduced to show that such an offer was made. It also had the seaman's testimony that all of the money received by him was for wages and bonus. No testimony was introduced to show that he was not due such wages and bonus. The undisputed evidence was that a certificate of discharge, or other instrument, from the shipowner was necessary in order for the seaman to enter a marine hospital. The respondent did not furnish, nor did it offer to furnish, any such certificate; and no explanation was given for its failure to do so. In order to obtain such a certificate, the seaman made a voyage and underwent further overland travel at a time when, according to the medical testimony, he should have been receiving treatment. All of these matters were before the jury, as well as respondent's contention that it had paid the seaman $500.00, to his satisfac-

tion, which absolved it from further responsibility for the tubercular seaman, and with which money he could subscribe for treatment at any private hospital of his choice.

On the issue of proximate cause, the jury was instructed that the seaman was not entitled to compensation for suffering resulting from disregard of any physician's advice, or for aggravation of his tubular condition due to his own fault or ignorance, and that if it found "that the defendant company supplied the deceased with funds which could have been used for maintenance and care, and that defendant's doctors advised Premeaux that he had pulmonary tuberculosis, moderately advanced, and that after again going to sea and after securing a discharge from the Pure Oil Company ship, in consequence of which he was eligible to treatment in a marine hospital, and nevertheless failed to take advantage of such treatment, the original fault of the defendant shipowner would not be the proximate cause of Premeaux's physical and mental pain and suffering."

The medical testimony was all to the effect that early diagnosis and treatment are most important for recovery from tuberculosis; that immediate treatment with rest and ample diet are necessary. The seaman received no such treatment. He was dismissed by respondent without instructions as to the necessity of such prompt treatment. Approximately a month elapsed before the seaman, through his own efforts, obtained a discharge certificate which would admit him to a marine hospital. There is nothing in this record to show that he could have been admitted to a marine hospital without such a discharge certificate. With a temperature of 102 degrees he was allowed to make a long, and doubtless exhausting, bus trip of four days; after which he was "laid up." Obtaining employment, making a week's voyage as a messman, followed by another bus trip from Alabama to Texas, certainly did not prove beneficial for his recovery. It is not necessary to inquire into the matter further after the time the seaman obtained a certificate allowing him to enter a marine hospital. From the medical testimony, the jury had before it evidence which would justify a finding that there was an aggravation or acceleration of the seaman's tubercular condition.

■ The Court of Civil Appeals held that there was no evidence to support the jury's findings on negligence and proximate cause, and reversed and rendered the case. That decision gave this Court jurisdiction to review the evidence. We have reviewed

the evidence, and find that it supports the findings of the jury on negligence and proximate cause. Therefore the Court of Civil Appeals was in error in holding, as it did, regarding the findings of the jury concerning this matter. ·

The trial court held petitioners entitled to recover the sum of $550.00 for cost of maintenance and cure and $3,000.00 for damages for physical and mental suffering. The Court of Civil Appeals reversed the judgment of the trial court. The Court of Civil Appeals was correct in holding petitioners not entitled to recover $550.00 for cost of maintenance and cure, but was in error in holding petitioners not entitled to the $3,000.00 for damages for physical and mental suffering. As to this latter holding, the judgment of the Court of Civil Appeals is reversed. That part of the judgment of the trial court awarding petitioners $3,000.00 is affirmed.

Opinion delivered January 23, 1946.

Rehearing overruled February 20, 1946.