### THE MONONGAHELA.
### No. 12.

District Court, W. D. Kentucky, at Louisville.

March 3, 1947.

Leo J. Sandmann, of Louisville, Ky., for libellant.

Thomas J. Wood and T. Kennedy Helm, Jr., both of Louisville, Ky., for libellee.

SHELBOURNE, District Judge.

This proceeding in Admiralty was begun December 23, 1944, by W. H. Holley, Sr., statutory guardian for Constance Jean Holley, and W. H. Holley, Sr., administrator of the estate of W. H. Holley, Jr., as Libellants against the vessel "Monongehela," her tackle, equipment, etc. The original was a libel in rem and purported to state four separate causes of action in favor of the Guardian and Administrator jointly.

The "First Cause of Action" sought recovery of $6,370, which it is claimed equalled the wages W. H. Holley, Jr., would have earned in a period of thirty months following December 24, 1943.

The "Second Cause of Action" sought recovery of $3,000, alleged to equal the amount it would have cost W. H. Holley, Jr., for maintenance and cure during that thirty month period following December 24, 1943.

The "Third Cause of Action" sought recovery of $930. $250 of this amount is alleged to have been the cost of transporting the body of W. H. Holley, Jr., to his former home at Point Pleasant, West Virginia, from Louisville, Kentucky, where he died. The remaining $680 recovery sought was alleged to have been the reasonable funeral expenses.

The two literary paragraphs constituting the "Fourth Cause of Action" are as follows:

"Libellant states, upon information and belief, that the offense herein set out was committed within the Admiralty and Maritime Jurisdiction of the United States and of this Honorable Court; and that the said vessel is now within the said jurisdiction; that the said vessel was duly licensed and enrolled as a vessel of the United States, with its home port at Pittsburgh, Pennsylvania; and that this said action is brought under the ancient rule of the Admiralty of Maintenance and Cure of a seaman becoming ill, sick, or diseased, while aboard the said vessel.

"All and singular the premises are true, and within the Admiralty and Maritime Jurisdiction of the United States and of this Honorable Court."

It is claimed, in substance, in the libel: That W. H. Holley, Jr., was hired as a deck hand at Point Pleasant, West Virginia, on December 19, 1943, at a wage of $7 per day for a seven-day week; that Holley continued to perform the duties of his employment until about 4:30 o'clock A.M. on December ——, 1943 when he became mentally unbalanced and a victim of amnesia; that he "acted queerly," "talked strangely" and "started going about the boat looking for his baby"; that about 7:30 o'clock P.M. the boat reached the locks at Louisville and Holley was sent to the U. S. Marine Hospital in a squad car of the Louisville Police Department; that the authorities at the hospital gave Holley a superficial examination and upon being told by Holley that nothing was wrong with him, permitted him to leave the hospital about 8:00 o'clock P.M.; that he went to the Grand Hotel where he registered about 11:00 o'clock under the name of Ralph Martin; that about 3:30 o'clock A.M. on December 24th he complained to the elevator operator that she must stop ringing the telephone because it awakened his Mother and that about that same hour, Holley fell through the elevator shaft sustaining injuries from which he died at about 4:30 that morning.

February 16, 1945, the Union Barge Line Corporation, owner of the vessel, filed exceptions to the libel claiming (1) that the facts stated in the libel were insufficient to constitute a cause of action, (2) that no cause of action within the Admiralty and Maritime jurisdiction of this Court was stated, and (3) that the facts stated did not give rise to any maritime lien on the vessel.

For reasons fully set forth in a written opinion of March 29, 1945, this Court (Judge Shackelford Miller then District Judge, now Circuit Judge) entered an order April 3, 1945, sustaining the exceptions and dismissing the libel.[1] [Opinion not reported.]

May 7, 1945, Libellant filed—(1) Motion for rehearing and (2) motion for leave to file amended libel and tendered for filing an "amended libel in personam."

By an order entered November 13, 1945, Libellant's motion for a rehearing was overruled, the motion for leave to amend was sustained and the "amended libel in personam" was ordered filed. The claim in this amendment was made under the Jones Act, Section 688, Title 46 U.S.C.A., and recovery was demanded against the vessel and the Union Barge Line as follows:

"Wherefore: Your libellants now pray as in their original petition, for the sum of Eighty-Five Thousand, Two Hundred and Fifty-six and 08/100 ($85,256.08) Dollars, as is set out herein; together with their costs herein expended; and for any and such other relief in the premises, general or special, as in law, justice and equity they may be entitled to receive."

By an order of January 4, 1946, on appropriate motions of respondent, the name of Constance Jean Holley, suing by her guardian was stricken as a party and exceptions of respondent to the Amended Libel were sustained with leave to W. H. Holley, Sr. as Administrator to "amend said amended libel."

January 7, 1946, Libellant filed "amendment to libel in rem" in which the same facts were alleged substantially as had theretofore been alleged in the original and various amended libels.

---

[1] No opinion for publication.

The record contains no exceptions filed to the libel as thus amended but Libellant on May 31, 1946, filed "amended and substituted libel in personam" in the first paragraph of which he says—

"For the purpose of convenience and expediency this Amended and Substituted Libel in Personam is filed herein and substituted for both the Amended Libel in Personam and the Amendment to Libel in Rem."

The claim in this pleading is based upon the Jones Act, 46 U.S.C.A. § 688, but in paragraph 17 of the pleading Libellant states:

"That without waiving his exceptions and objections to the rulings of the Court in sustaining exceptions to his original Libel for maintenance, cure and wages, libellant now asserts his claim for damages for the death of the said seaman; and states that the respondents have failed, neglected, and refused to pay the libellant-administrator either maintenance, cure, wages, or damages, as such administrator of the said decedent's estate; as a result of all of which the libellant now asks damages in addition to those claimed in his original Libel to the extent of $85,256.08, no part of which has been paid."

The negligence complained of is: (1) That the seaman was put off the vessel at Louisville alone; (2) that no member of the crew or the Master accompanied the seaman to the Marine Hospital, the seaman being a stranger in Louisville: (3) that the seaman was sent to the Hospital in a squad car of the Lousiville Police Department where he was put out of the car and went into the Hospital alone: (4) The master gave the seaman a "Hospital Ticket" and failed to state thereon what the seaman's illness or complaint was and (5) that the seaman had not been employed aboard the boat for sufficient time to entitle him to hospitalization and that the Master thereby put the mentally deranged seaman off the vessel with a hospital ticket which he knew or should have known in the exercise of ordinary care would not admit the seaman to the hospital.

It is claimed that as a result of this negligence, the seaman died and Libellant seeks recovery of $10,300 sought in the original Libel as maintenance, cure, wages, funeral and burial expenses and the additional sum of $85,256.08, the amount the seaman would have earned during the period of his expectancy of 33.46 years at wages of $49 per week.

The Libellees filed answer October 14, 1946, in which all allegations of negligence were denied. The seaman's illness was admitted and it was averred that the Master fully and promptly discharged his duty by sending the seaman in charge of police officers to the Marine Hospital promptly upon the arrival of the boat at Louisville.

There is little contrariety in the proof.

A photostatic copy of the Master's certificate signed by Walter E. Canter, Master of the vessel, was filed with the testimony of Dr. Jas. F. Crane, Acting Assistant Surgeon of the Marine Hospital. Both Dr. Crane and Dr. G. Halsey Hunt, Chief of Surgery and the officer at the hospital to whom the seaman was delivered by the policemen, say that the Master's certificate is to establish eligibility of the patient for treatment and that seldom, if ever, do such certificates make reference to the nature or severity of the patient's ailment.

Upon the certificate in question, the seaman signed his name and stated his nativity, age, height and color of eyes and hair in spaces provided on the form for that information. There is no space on the form indicating that the Master should have given any information other than to identify the seaman as a member of the crew of the particular vessel and to certify that he was entitled to medical treatment by the U. S. Public Health Service.

The hospital record of the seaman's admission, signed by Dr. Hunt, shows that the patient gave a history of a bad cold for four or five days; that Dr. Hunt diagnosed the ailment as acute bronchitis, mild and prescribed bed rest, force fluids and hospitalization, which the patient refused. Dr. Hunt says the patient did not disclose symptoms of mental abnormality.

The lock keeper at Louisville corroborates Captain Canter as to the telephone call to the Louisville Police Department and

the request for them to take the seaman to the hospital because of his mental upset.

The two police officers testify that they did take the seaman to the hospital and gave the Doctor who received him at the hospital the information given them.

Libellant complains because Captain Canter did not send Holley to his home at Point. Pleasant, West Virginia, in charge of Captain Garland, a pilot, who left the boat at Louisville to return to Point Pleasant where he also lived. There is no showing in the evidence that Captain Garland offered or was willing to take Holley to his home and the Master's duty was to place the seaman where he could get medical services. This duty he appears to have performed.

There is no dispute between Counsel that respondent owed to the seaman the duty to furnish reasonable care, including nursing and hospitalization, and that a failure to discharge this duty is a personal injury for which the seaman may maintain an action under the Jones Act.

Should death result to the seaman from such failure, an action lies in his personal representative. U.S.C.A. Title 46, § 688; Cortez v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; Jacob v. City of New York, 315 U.S. 752, 755, 62 S.Ct. 854, 86 L.Ed. 1166; Premeaux et al. v. Socony-Vacuum Oil Co., Tex.Sup., 192 S. W.2d 138.

. The ship owner, however, is not an insurer of the safety of a seaman, nor can the Master of a ship be required to possess medical knowledge necessary to enable him to diagnose the ailments of the seaman. Pittsburgh S. S. Co. v. Palo, 6 Cir., 64 F.2d 198; Calmar S. S. Corporation v. Taylor, 3 Cir., 92 F.2d 84, 86; Cadle v. United States, D.C.Cal., 65 F.Supp. 288.

The proof in this case does not uphold Libellant's contention that the seaman was put off the vessel alone. It is conclusive under the proof that the Master called the Police Department and we know of no agency that would suggest itself if a mental disorder was thought to be the ailment of the seaman. Nor can I conclude that it is any evidence of negligence on the part of the Master that he did not accompany the seaman to the hospital nor dispatch a member of the crew to accompany the seaman. The answer to this contention is that the seaman did reach the hospital and was placed in the care of a competent doctor. The "hospital ticket" was in part a certificate entitling the seaman to treatment without limitation, and the seaman was not permitted to leave the hospital because of any lack of eligibility on his part to receive hospitalization and treatment.

The failure on the part of the doctor in charge of the examination of Holley to compel him to remain at the hospital could not be attributed to the respondent.

I therefore conclude that there is no showing in this case of negligence on the part of the respondent, which makes unnecessary consideration of whether there is any causal connection between the failure to require the seaman to remain in the hospital and his fall in the elevator shaft of the hotel later in the night, and also obviates the necessity of considering whether there is a showing by evidence, of facts which would establish any measure of damage under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

The libel will be dismissed and judgment providing for this dismissal may be tendered by the respondent on notice to libellant.