Collene W. McCALL, as Administratrix of the Estate of Travis M. McCall, deceased, Plaintiff-Appellant,

v.

OVERSEAS TANKSHIP CORPORATION, Defendant and Third Party Plaintiff-Appellee-Appellant (NORTHWEST AIRLINES, Inc., Third Party Defendant-Appellee).

No. 253, Docket 23176.

United States Court of Appeals Second Circuit.

Argued April 5, 6, 1955.

Decided May 10, 1955.

---

3. Emphasis supplied.

See also 16 F.R.D. 467.

William A. Blank, Brooklyn, N. Y., for plaintiff-appellant.

Bigham, Englar, Jones & Houston, New York City, John L. Quinlan, John J. Martin and Paul Pennoyer, Jr., New York City, of counsel, for defendant-appellee-appellant.

Mendes & Mount, New York City, Kenneth R. Thompson and Keith Brown, New York City, of counsel, for third party defendant-appellee.

Before L. HAND, SWAN and HINCKS, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought under the Jones Act, 46 U.S.C.A. § 688, by the widow and administratrix of a deceased seaman to recover damages for his wrongful death. The complaint alleges that the decedent, Travis J. McCall, was a seaman employed by the defendant and that he was killed "in the course of his employment" by the negligence of the agents or employees of the defendant. The defendant's answer denied these allegations and asserted that no action would lie under the Jones Act. The facts are not in dispute. The defendant (hereafter called Overseas) is a Panamanian corporation and maintains an office in New York City. It was engaged in delivering tankers for operation in the Far East. In December 1947 McCall signed shipping articles for a voyage on

Overseas' tanker Sunset. An addendum to the articles provided:

"It is mutually understood and agreed that the unlicensed crew members signing these articles are to serve in accordance with rules and regulations as shown hereunder for a voyage from a port in the United States until arrival at a port East of Suez where they will be signed off and replaced. Owners will then arrange transportation either by air or steamer, at Owner's option, (accommodations becoming first available and if less than 1st class, each member will be reimbursed for the difference in cost to port of engagement). In all instances where board or lodging is not provided for, an allowance of $4.00 per day for meals and $3.00 per day for room will be paid.

"Full wages at the rates shown hereunder are to be paid during the period actually awaiting and in the course of repatriation to the port of engagement."

The defendant's tanker Sunset departed from Port Chester, Pennsylvania, on December 19, 1947 and arrived at Shanghai, a port east of Suez, on March 11, 1948. On that date, before the Panamanian Consul, McCall "signed off", received his certificate of discharge, and settled his accounts with the ship's master. Overseas had previously, in February 1947, entered into a contract with Northwest Airlines, Inc., pursuant to which Northwest undertook to transport the tanker crews from Shanghai to New York. McCall had made two previous voyages on other tankers under identical shipping articles and had been brought back by airplane. The plane which was returning the crew of the "Sunset" crashed against a mountain in Alaska on March 12, 1948, causing his death. The present action was commenced in November 1949.

■ At the close of the plaintiff's case a motion to dismiss the complaint and direct a verdict for the defendant was granted by Judge Conger. We agree with his opinion, expressed orally, that no case was made out under the Jones Act. That statute is concerned with the relative rights and obligations of seamen and their employers arising out of personal injuries or death sustained by the former "in the course of their employment." [1] After McCall signed off at Shanghai, he was no longer in the employ of Overseas as a seaman. It is true that Overseas was under a contractual duty to "arrange transportation" for his return to the United States and to pay him an amount equal to his wages for the time consumed enroute. But he was under no contractual duty to accept the offered transportation; he was at liberty to remain in Shanghai, to take other employment there, or to go wherever he pleased. After his return, had he arrived, he was free to work for whomever he might choose. Overseas had no right to his time or services and could give him no orders either in Shanghai or after he got home. The fact that he might later be reemployed as a seaman on another of Overseas' tankers does not make what he was doing in the meantime maritime employment. [2] Hence the fatal airplane trip was not something done "in the course of his employment" as a seaman. Even though both parties knew when he signed the shipping articles and when he signed off, that he expected to use the air transportation arranged by Overseas, his acceptance of it was something done at his own election and after his employment had ceased. This distinguishes the cases relied upon by the ap-

1. Panama R. Co. v. Johnson, 264 U.S. 375, 387, 44 S.Ct. 391, 394, 68 L.Ed. 748; McKie v. Diamond Marine Co., 5 Cir., 204 F.2d 132, 134.

2. Desper v. Starved Rock Ferry Co., 342 U.S. 187, 191, 72 S.Ct. 216, 218, 96 L.Ed. 205, where the court quoted with approval the statement in Antus v. Interocean S.S. Co., 6 Cir., 108 F.2d 185, 187; "'The fact that he had been, or expected in the future to be, a seaman does not render maritime work which was not maritime in its nature.'"

pellant which hold that when an employer furnishes an employee transportation to or from his place of employment, an injury sustained by him during the transportation is deemed to have been in the course of employment.

■ Even if it be assumed arguendo that McCall continued in the employ of Overseas during his flight home, its contractual duty to "arrange transportation" did not make it an insurer of his safety en route. Its duty was to exercise ordinary and reasonable care in selecting the carrier. There is no suggestion that it failed to do so. Northwest was a certified scheduled carrier, its plane was operated by a duly licensed crew, and it flew an approved route certificated by the Civil Aeronautics Authority. Appellant's contention that Northwest's crew were pro hac vice servants of Overseas so that negligence, if any, on their part is imputable to Overseas merits little discussion. The contract between Overseas and Northwest reserved to the latter "complete and exclusive control of the aircraft involved." Northwest was an independent contractor. Overseas' relation to the flight was merely that of a purchaser of tickets for its discharged crew. These facts preclude an application of the pro hac vice doctrine.[3]

■ Although Overseas was under a contractual duty to McCall to arrange for his transportation back to the United States, we can find nothing in the statutes relating to seamen or the cases construing them to support appellant's contention that this duty could not be delegated to an independent contractor. The case most closely in point which has been brought to our attention is Socony-Vacuum Oil Co. v. Premeaux, Tex.Civ.App., 187 S.W.2d 690; Premeaux v. Socony-Vacuum Oil Co., 144 Tex. 558, 192 S.W. 2d 138. There the seaman fell sick dur-

ing a foreign voyage and was brought home on the ship of another company. He sued his employer under the Jones Act for injuries resulting from improper care furnished by the repatriating vessel. It was held that the action could not be maintained. We agree. Overseas discharged whatever duty it owed the decedent by engaging an independent contractor of conceded competence to supply the transportation home.

■ The appellant's final contention that the court erred in refusing to submit the case to the jury under the doctrine of res ipsa loquitur is obviously falacious since Overseas had no control over the airplane or its crew.[4]

Inasmuch as we have held for reasons above stated that Overseas discharged in full its contractual duty to the decedent, it is unnecessary to consider whether error was committed in excluding from evidence the minutes and exhibits of the Civil Aeronautics Board hearing, at which Overseas was neither present nor represented.

■ The defendant's appeal requires but brief discussion. The first count of the third party complaint alleged the right of Overseas to be indemnified by Northwest if Overseas should be held liable to the plaintiff. Since the plaintiff was allowed no recovery, this count was properly dismissed. The second count alleged that "following the death of said deceased", Northwest agreed with Overseas to procure an effective release of Overseas from any liability arising out of the death of said deceased, that Northwest failed to procure such release, and "by reason thereof" Overseas is entitled to recover from Northwest any sums the plaintiff may recover against Overseas, together with all sums expended by Overseas in defense of this action and in prosecuting this action over against North-

3. Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 29 S.Ct. 252, 53 L.Ed. 480; Linstead v. Chesapeake & Ohio Ry. Co., 276 U.S. 28, 33, 48 S.Ct. 241, 72 L.Ed. 453; The F. B. Squire, 2 Cir., 248 F. 469, 471.

4. See Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 332, 49 S.Ct. 329, 73 L. Ed. 711; The Mercier, D.C.Or., 5 F. Supp. 511, affirmed Anderson Compagnie Maritime Belge (Lloyd Royal) Society, 9 Cir., 72 F.2d 1008.

west. The answer of Northwest denied that it made the alleged agreement to procure a release. So far as appears in the Appendices, there is no evidence that such a promise was ever made. Moreover, the third party complaint alleged no consideration for such promise. On its face the second count was insufficient and its dismissal was correct.

Judgment affirmed.

L. HAND, Circuit Judge (concurring).

Since we are all agreed that the airplane company was an independent contractor, whose negligence is not to be imputed to the defendant, it is not necessary to decide whether McCall was still in the employment of the defendant when he was killed, and I prefer not to do so.