## Case No. 15,540.

### UNITED STATES v. KNOWLES.

[4 Sawy. 517.] [1]

District Court, N. D. California. July 11, 1864.

HOMICIDE—ALLOWING A SAILOR TO DROWN—DUTY OF SEA CAPTAIN—REASONABLE DOUBT —GOOD CHARACTER.

1. An indictment against a ship-captain for murder, charging him with having willfully omitted to stop the ship, or to lower either of its boats, or to make any attempt to rescue a sailor, who, while employed on the royal-yard arm, had accidentally fallen into the sea, by reason of which omission and negligence, the sailor was drowned, will not warrant a conviction of any greater offense than manslaughter.

2. Where the death of a human being is the direct and immediate result of the omission of a party to perform a plain duty, imposed upon him by law or contract, such party is guilty of a felonious homicide.

[Cited in Thomas v. People (Colo. App.) 31 Pac. 350.]

3. In case of a person falling overboard from a ship at sea, whether passenger or seaman, where he is not killed by the fall, the commander is bound both by law and by contract to do everything, consistent with the safety of the ship and of the passengers and crew, necessary to his rescue, no matter what delay in the voyage may be occasioned, or what expense to the owners may be incurred.

4. A doubt founded upon a consideration of all the circumstances and evidence, and not a doubt resting upon mere conjecture or speculation, is a reasonable doubt.

[Cited in State v. Gile (Wash.) 35 Pac. 421.]

5. On the trial of a sea-captain for manslaughter, in omitting any attempt to rescue one of his crew, who had fallen from the royal-yard-arm into the sea, and the defense was that the seaman had been killed by the fall: Held, that the burden was upon defendant of showing that the fall was fatal, or of showing such attending circumstances as to create a reasonable doubt whether such was not the fact.

6. If there be any doubt as to the conduct of a person charged with crime, his previous good

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

life and character is entitled to consideration with the jury.

The defendant [Josiah N. Knowles] was indicted and tried at the June term of 1864, for murder on the high seas. The facts of the case sufficiently appear in the charge of the court.

William H. Sharp, U. S. Atty.

Hall McAllister, for defendant.

FIELD, Circuit Justice (charging jury). The defendant is charged in the indictment with the crime of murder upon the high seas. The district attorney does not, however, seek from you a conviction of the defendant for this offense. He asks only a conviction for manslaughter, and the trial has been conducted as if the indictment charged only this lesser offense. Indeed, the facts it alleges as a foundation for the charge would not warrant a conviction of any greater offense. It alleges that the defendant was, on the first day of April, 1864, captain of the American ship Charger, belonging to citizens of the United States; that the ship had on board ten mariners, and among them one John P. Swainson; that the ship was provided with three boats, for the protection and safety of the lives of the persons on board, in case of accident; and that it was the duty of the defendant to manage and control the ship and boats, so as to insure such protection and safety; that on the first of April, 1864, the said Swainson was employed as seaman upon the royal-yard-arm of the mainmast of the ship in furling the royal-sail; that whilst thus employed he accidentally fell into the sea; and that the defendant willfully omitted to stop the ship, or to lower either of the boats, or to make any attempt to rescue and save Swainson, as was his duty to do; that Swainson would have been rescued and saved had the defendant stopped his ship and lowered either of his boats, and from his negligence and omission in this respect, Swainson was drowned.

As you will thus perceive, gentlemen, the charge is that the death of Swainson was occasioned by the willful omission of the defendant to stop the ship, lower the boats, and rescue him, or to make any attempt for his rescue. In the majority of cases where manslaughter is charged, the death alleged has resulted from direct violence on the part of the accused. Here the death is charged to have been occasioned by the willful omission of the defendant to perform a plain duty.

There may be in the omission to do a particular act under some circumstances, as well as in the commission of an act, such a degree of criminality as to render the offender liable to indictment for manslaughter. The law on the subject is this: that where death is the direct and immediate result of the omission of a party to perform a plain duty imposed upon him by law or contract, he is guilty of a felonious homicide. There are several particulars in this statement of the law, to which your attention is directed.

In the first place, the duty omitted must be a plain duty, by which I mean that it must be one that does not admit of any discussion as to its obligatory force; one upon which different minds must agree, or will generally agree. Where doubt exists as to what conduct should be pursued in a particular case, and intelligent men differ as to the proper action to be had, the law does not impute guilt to any one, if, from omission to adopt one course instead of another, fatal consequences follow to others. The law does not enter into any consideration of the reasons governing the conduct of men in such cases, to determine whether they are culpable or not.

In the second place, the duty omitted must be one which the party is bound to perform by law or contract, and not one the performance of which depends simply upon his humanity, or his sense of justice or propriety. In the absence of such obligations, it is undoubtedly the moral duty of every person to extend to others assistance when in danger; to throw, for instance a plank or rope to a drowning man, or make other efforts for his rescue, and if such efforts should be omitted by any one when they could be made without imperiling his own life, he would, by his conduct, draw upon himself the just censure and reproach of good men; but this is the only punishment to which he would be subjected by society.

In the third place, the death which follows the duty omitted must be the immediate and direct consequence of the omission. There are many cases in the reports in which this doctrine of liability for negligence resulting in death is asserted. In one case a defendant had been employed to give signals to railway trains of obstructions on the road. Having on one occasion neglected to give the proper signal of an obstruction, a collision followed, causing the death of a passenger. The negligence was held to be criminal, and the defendant was convicted of manslaughter. Reg. v. Pargeter, 3 Cox, Cr. Cas. 191. In another case, the defendant was employed as the ground bailiff of a mine, and as such it was his duty to cause the mine to be ventilated, by directing air-headings to be placed where necessary. By his omission to do this in a particular place, the damp in the mine exploded, and several persons were killed. The defendant was indicted for manslaughter, and the court instructed the jury that if they were satisfied that it was the ordinary and plain duty of the prisoner to cause the air-heading to be made in the mine, and that a person using reasonable diligence would have had it done, and that by the omission the death of the deceased occurred, they should find the prisoner guilty. Reg. v. Haines, 2 Car. & K.

368. In these cases, you will perceive that the omission which resulted fatally was of a plain personal duty, and that the accident was the immediate and direct consequence of the omission.

Now, in the case of a person falling overboard from a ship at sea, whether passenger or seaman, when he is not killed by the fall, there is no question as to the duty of the commander. He is bound, both by law and by contract, to do everything consistent with the safety of the ship and of the passengers and crew, necessary to rescue the person overboard, and for that purpose to stop the vessel, lower the boats, and throw to him such buoys or other articles which can be readily obtained, that may serve to support him in the water until he is reached by the boats and saved. No matter what delay in the voyage may be occasioned, or what expense to the owners may be incurred, nothing will excuse the commander for any omission to take these steps to save the person overboard, provided they can be taken with a due regard to the safety of the ship and others remaining on board. Subject to this condition, every person at sea, whether passenger or seaman, has a right to all reasonable efforts of the commander of the vessel for his rescue, in case he should by accident fall or be thrown overboard. Any neglect to make such efforts would be criminal, and if followed by the loss of the person overboard, when by them he might have been saved, the commander would be guilty of manslaughter, and might be indicted and punished for that offense.

In the present case it is not pretended that any efforts were made by the defendant to save Swainson, nor is the law as to the duty of the commander, and his liability for omitting to perform it under the conditions stated, controverted by counsel. The positions taken in the defense of the accused are: (1) That Swainson was killed by his fall from the yard; (2) that if not killed, it would have been impossible to save him in the existing condition of the sea and weather; (3) that to have attempted to save him would have endangered the safety of the ship and the lives of the crew. If in your judgment either of these positions is sustained by the evidence, the defendant is entitled to an acquittal.

The killing of Swainson from his fall is alleged from the distance he must have fallen, and the absence of any appearance of subsequent motion on his part in the water. The distance was one hundred and ten feet, as stated by one of the witnesses from actual measurement. Another witness says that Swainson struck the water on his back or front; a third witness states that the feet of Swainson struck the water first, but that the position of the body was somewhat inclined. From the noise made in falling, the mate was of the opinion that Swainson struck the channels on the side of the vessel in his fall. You can judge of the probabilities of the man being alive after a fall of this kind. If you believe from the evidence that he was killed by the fall, that is an end of this case, and you need not pursue your inquiries further. But more, if you have any reasonable doubt, by which I mean a doubt founded upon a consideration of all the circumstances and evidence, and not a doubt resting upon mere conjecture or speculation, whether he was killed by the fall, you need not go further. The prosecution proceeds upon the ground that he was not thus killed, the district attorney relying upon the general presumption of the law that a man known to be alive at a particular time continues alive until his death is proved, or some event is shown to have happened to him which usually, in the experience of men, proves fatal. The fall of a person into the sea from a height of one hundred and ten feet is not an event which is necessarily fatal. Nor can it be said that in the experience of men it is usually so. Its effect depends very much, if not entirely, upon the manner in which the party falling strikes the water, and the existence of obstacles breaking the force of the fall. The fact, therefore, that the fall of Swainson appears in the evidence presented by the prosecution, does not change the presumption of the law, which I have mentioned. The burden still remains upon the defendant of showing that the fall was fatal, or of showing such attending circumstances as to create a reasonable doubt whether such was not the fact. You will not take the fall itself as conclusive on this point, but will consider it in connection with the evidence of the manner in which the party fell, and particularly of the manner in which he struck the water in falling.

If you are satisfied that the fall was not immediately fatal, the next inquiry will be whether Swainson could have been saved by any reasonable efforts of the captain, in the then condition of the sea and weather. That the wind was high there can be no doubt. The vessel was going, at the time, at the rate of twelve knots an hour; it had averaged, for several hours, ten knots an hour. A wind capable of propelling a vessel at that speed would, in a few hours, create a strong sea. To stop the ship, change its course, go back to the position where the seaman fell overboard, and lower the boats, would have required a good deal of time, according to the testimony of several witnesses. In the meanwhile, the man overboard must have drifted a good way from the spot where he fell. To these considerations, you will add the probable shock and consequent exhaustion which Swainson must have experienced from the fall, even supposing that he was not immediately killed.

It is not sufficient for you to believe that possibly he might have been saved. To find the defendant guilty, you must come to the

conclusion that he would, beyond a reasonable doubt, have been saved if proper efforts to save him had been seasonably made, and that his death was the consequence of the defendant's negligence in this respect. Besides the condition of the weather and sea, you must also take into consideration the character of the boats attached to the ship. According to the testimony of the mate. they were small and unfit for a rough sea.

During the trial, much evidence was offered as to the character of the defendant as a skillful and able officer and as a humane man. The act charged is one of gross inhumanity; it is that of allowing a sailor falling overboard, whilst at work upon the ship, to perish, without an effort to save him, when by proper efforts, promptly made, he could have been saved. If there be any doubt as to the conduct of the defendant, his past life and character should have some consideration with you.

With these views, I leave the case with you. It is one of much interest, but I do not think that, under the instructions given, you will have any difficulty in arriving at a just conclusion.

The jury returned a verdict of acquittal.