CORTES, ADMINISTRATOR, *v.* BALTIMORE INSULAR LINE, INC.

No. 12. Argued November 16, 1932.—Decided December 5, 1932.

368

*Mr. Basil O'Connor* for petitioner.

*Mr. Geo. Whitefield Betts, Jr.,* for respondent.

370

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Santiago, a seaman, shipped on the respondent's vessel for a voyage from the harbor of New York to Boca Grande, Florida, and return. On the home voyage, he fell ill of pneumonia, and died in a hospital after reaching the home port. His administrator, the petitioner, sued to recover damages for his death, which was charged to have been caused by the failure of the master of the ship to give him proper care. In the District Court there was a judgment for the petitioner, which was reversed upon appeal. The reversal was on the ground that the seaman's right of action for negligent care or cure was ended by his death, and did not accrue to the administrator for the use of next of kin. 52 F. (2d) 22. The case is here on certiorari.

By the general maritime law a seaman is without a remedy against the ship or her owners for injuries to his person, suffered in the line of service, with two exceptions

only. A remedy is his if the injury has been suffered as a consequence of the unseaworthiness of the ship or a defect in her equipment. *The Osceola,* 189 U. S. 158; *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Pacific Co.* v. *Peterson,* 278 U. S. 130, 134. A remedy is his also if the injury has been suffered through breach of the duty to provide him with " maintenance and cure." The duty to make such provision is imposed by the law itself as one annexed to the employment. *The Osceola, supra.* Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident. If the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt. *The Iroquois,* 194 U. S. 240. On the other hand, the remedy for the injury ends with his death in the absence of a statute continuing it or giving it to another for the use of wife or kin. *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 240; *Lindgren* v. *United States,* 281 U. S. 38, 47. Death is a composer of strife by the general law of the sea as it was for many centuries by the common law of the land.

The question then is to what extent the ancient rule has been changed by modern statute. Section 33 of the Merchant Marine Act of 1920, commonly known as the Jones Act [1] (41 Stat. 1007, § 33; 46 U. S. Code, § 688),

---

[1] " That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by

gives a cause of action to the seaman who has suffered personal injury through the negligence of his employer. For death resulting from such injury it gives a cause of action to his personal representative. We are to determine whether death resulting from the negligent omission to furnish care or cure is death from personal injury within the meaning of the statute.

The argument is pressed upon us that the care owing to a seaman disabled while in service is an implied term of his contract, and that the statute cannot have had in view the breach of a duty contractual in origin for which he had already a sufficient remedy under existing rules of law.

We think the origin of the duty is consistent with a remedy in tort, since the wrong, if a violation of a contract, is also something more. The duty, as already pointed out, is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties. For breach of a duty thus imposed, the remedy upon the contract does not exclude an alternative remedy built upon the tort. The passenger in a public conveyance who has been injured by the negligence of the carrier, may sue for breach of contract if he will, but also at his election in trespass on the case. *Jackson* v. *Old Colony Street Ry.*, 206 Mass. 477, 485; 92 N. E. 725; *Busch* v. *Interborough R. T. Co.*, 187 N. Y. 388, 391; 80 N. E. 197; *Rich* v. *New York Central & H. R. R. Co.*, 87 N. Y. 382, 390; *Neil* v. *Flynn Lumber Co.*, 71 W. Va. 708; 77 S. E.

jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

Compare the act of March 30, 1920, c. 111, § 1, 41 Stat. 537, 46 U. S. Code, § 761, " Death on the High Seas by Wrongful Act," which extends to persons other than seamen, but is limited to suits in admiralty.

324; cf. the cases cited in Pollock on Torts (13th ed.), p. 557 *et seq.* The employee of an interstate carrier injured through the omission to furnish him with safe and suitable appliances may have a remedy under the Federal Employers' Liability Act (45 U. S. Code § 51), or at times under the Safety Appliance Act (45 U. S. Code, §§ 1 to 6), though the omission would not be actionable in the absence of a contract creating the employment. So, in the case at hand, the proper subject of inquiry is not the quality of the relation that gives birth to the duty, but the quality of the duty that is born of the relation. If the wrong is of such a nature as to bring it by fair intendment within the category of a " personal injury " that has been caused by the " negligence " of the master, it is not put beyond the statute because it may appropriately be placed in another category also.

We are thus brought to the inquiry whether " negligence " and " personal injury " are terms fittingly applied to the acts charged to the respondent. The case is helped by illustrations. Let us suppose the case of a seaman who is starved during the voyage in disregard of the duty of maintenance with the result that his health is permanently impaired. There is little doubt that in the common speech of men he would be said to have suffered a personal injury, just as much as a child in an orphan's home who had been wronged in the same way. Cf. *Queen* v. *Instan,* [1893] 1 Q. B. 450. Let us suppose the case of a seaman slightly wounded through his own fault, but suffering grievous hurt thereafter as a consequence of septic poisoning brought about by lack of treatment. The common speech of men would give a like description to the wrong that he had suffered. The failure to provide maintenance or cure may be a personal injury or something else according to the consequences. If the seaman has been able to procure his maintenance and cure out of his own or his friends' money, his remedy

is for the outlay, but personal injury there is none. If the default of the vessel and its officers has impaired his bodily or mental health, the damage to mind or body is none the less a personal injury because he may be free at his election to plead it in a different count. Cf. *Pacific Co.* v. *Peterson, supra*, pp. 137, 138. Nor is liability escaped by appeal to the distinction between acts of omission on the one hand and those of commission on the other. *Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 167, 168; 159 N. E. 896. A division is sometimes drawn between the termination of a relation at a time when it is still executory or future, and its termination when performance has gone forward to such a point that abandonment of duty becomes an active agency of harm. *Moch Co.* v. *Rensselaer Co., supra.* The respondent is not helped though its treatment of the seaman be subjected to that test. Here performance was begun when the vessel started on her voyage with Santiago aboard and with care and cure cut off from him unless furnished by officers or crew. From that time forth withdrawal was impossible and abandonment a tort. Given a relation involving in its existence a duty of care irrespective of a contract, a tort may result as well from acts of omission as of commission in the fulfilment of the duty thus recognized by law. *Moch Co.* v. *Rensselaer Water Co., supra*, citing Pollock on Torts, (13th ed.), p. 567; *Kelly* v. *Metropolitan Ry. Co.*, [1895] 1 Q. B. 944.

We are told, however, that the personal injury from negligence covered by the statute must be given a narrow content, excluding starvation and malpractice, because for starvation and malpractice the seaman without an enabling act had a sufficient remedy before. The seaman may indeed have had such a remedy, but his personal representative had none if the wrong resulted in his death. While the seaman was still alive, his cause of action for personal injury created by the statute may have

overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an unseaworthy ship. *Pacific Co.* v. *Peterson, supra,* p. 138; *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316, 321, 324. In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them. The overlapping is no reason for denying to the words of the statute the breadth of meaning and operation that would normally belong to them, at all events when a consequence of the denial is to withhold any remedy whatever from dependent next of kin. A double remedy during life is not without a rational office if the effect of the duplication is to carry the remedy forward for others after death. The argument for the respondent imputes to the lawmakers a subtlety of discrimination which they would probably disclaim. There was to be a remedy for the personal representative if the seaman was killed by the negligent omission to place a cover over a hatchway or to keep the rigging safe and sound. There was to be none, we are told, if he was killed for lack of food or medicine, though the one duty equally with the other was attached by law to the relation. This court has held that the act is to be liberally construed in aid of its beneficent purpose to give protection to the seaman and to those dependent on his earnings. *Jamison* v. *Encarnacion,* 281 U. S. 635. An assault by one member of the crew upon another with a view to hurrying up the work has been brought within the category of " negligence," and hence in a suit against the owner becomes an actionable wrong. *Jamison* v. *Encarnacion, supra; Alpha S. S. Corp.* v. *Cain,* 281 U. S. 642. Approaching the decision of this case in a like spirit of liberality, we put aside many of the refinements of construction that a different spirit might approve.

The failure to furnish cure is a personal injury actionable at the suit of the seaman during life, and at the suit of his personal representative now that he is dead. Cf. *U. S. Shipping Board E. F. Corp.* v. *Greenwald,* 16 F. (2d) 948.

We are warned, however, that in giving this content to the statute we are omitting to give heed to its reference to the act regulating the remedies of railroad employees, and are ignoring the standards of duty thus carried over and adopted. The Employers' Liability Act for the protection of the employees of common carriers by railroad gives a remedy to such employees " for injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier," or by reason of any negligent defect in its roadbed or equipment. 35 Stat. 65, § 1; 45 U. S. Code, § 51. True indeed it is that a common carrier by land is not subject to a duty, except in special circumstances, to give maintenance or cure to sick or disabled employees. We say except in special circumstances, for it would be hazardous to assert that such a duty may not rest upon the representative of a railroad as well as upon the master of a ship when the servant, exposed by the conditions of the work to extraordinary risks, is helpless altogether unless relief is given on the spot. *Ohio & Mississippi Ry. Co.* v. *Early,* 141 Ind. 73, 81; 40 N. E. 257; *Shaw* v. *Chicago, M. & St. P. Ry. Co.,* 103 Minn. 8; 114 N. W. 85; *Raasch* v. *Elite Laundry Co.,* 98 Minn. 357; 108 N. W. 477; *Hunicke* v. *Meramec Quarry Co.,* 262 Mo. 560, 581, 597; 172 S. W. 43.[2] The result, however, will not be different though we assume that the servant of a railroad company, if he has been injured without fault, may never call for help as due to him of right, however pressing the emergency and im-

---

[2] The authorities are brought together and carefully discriminated by Prof. Francis H. Bohlen, in an article " Moral Duty to Aid Others as Basis of Tort Liability," in 56 University of Penn. L. Rev. 217, 316, reprinted in his " Studies in the Law of Torts," pp. 290, 315.

perative the need. We do not read the act for the relief of seamen as expressing the will of Congress that only the same defaults imposing liability upon carriers by rail shall impose liability upon carriers by water. The conditions at sea differ widely from those on land, and the diversity of conditions breeds diversity of duties. This court has said that "the ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly." *Robertson* v. *Baldwin*, 165 U. S. 275, 287. Another court has said: "The master's authority is quite despotic and sometimes roughly exercised, and the conveniences of a ship out upon the ocean are necessarily narrow and limited." *Scarff* v. *Metcalf*, 107 N. Y. 211, 215; 13 N. E. 796. Out of this relation of dependence and submission there emerges for the stronger party a corresponding standard or obligation of fostering protection. There is doubt, and that substantial, whether the administrator of a railroad engineer who by misadventure has fallen from his locomotive while the train is on a bridge has a cause of action under the Federal Employers' Liability Act because of the failure of the crew of the train to come to the rescue of their comrade. *Harris* v. *Penn. R. R. Co.*, 50 F. (2d) 866, 868.[3] There is little doubt that rescue is a duty when a sailor falls into the sea, *United States* v. *Knowles*, 4 Sawy. 517, and that a liability to respond in damages is cast upon the shipowners if he is abandoned to his fate. *Harris* v. *Penn. R. R. Co.*, *supra*.

The act for the protection of railroad employees does not define negligence. It leaves that definition to be filled in by the general rules of law applicable to the conditions in which a casualty occurs. Cf. *Murray* v. *Chicago & N. W. Ry. Co.* 62 Fed. 24, 31; *Ward* v. *Erie R. Co.*, 230 N. Y. 230, 234; 129 N. E. 886; *Michigan* v. *Michigan Trust Co.*, 286 U. S. 334, 343. Congress did not mean

---

[3] Compare again the authorities collected by Bohlen in his "Studies in the Law of Torts," p. 312.

that the standards of legal duty must be the same by land and sea. Congress meant no more than this, that the duty must be legal, i. e., imposed by law; that it shall have been imposed for the benefit of the seaman, and for the promotion of his health or safety; and that the negligent omission to fulfill it shall have resulted in damage to his person. When this concurrence of duty, of negligence and of personal injury is made out, the seaman's remedy is to be the same as if a like duty had been imposed by law upon carriers by rail.

The Court of Appeals in its reversal of the District Court assumed without deciding that the care of the seaman had been negligent and that there was a causal relation between the negligence and the death. The correctness of that assumption is challenged by counsel for the shipowner. These issues of fact being still open and undecided should be disposed of by the court below.

The judgment is reversed and the cause remanded to the Court of Appeals for further proceedings in conformity with this opinion.

*Reversed.*