Clifford VAUGHAN, Libellant-Petitioner,

v.

N. J. ATKINSON, a non-resident, individually, and as Master; National Shipping & Trading Corporation and American Waterways Corporation, both foreign corporations, as owners and/or operators of the American SS "National Liberty", Respondents.

No. 480.

United States District Court
E. D. Virginia,
Newport News Division.

Aug. 22, 1960, as of Nov. 5, 1959.

---

Burt M. Morewitz, Newport News, Va., for libellant.

Vandeventer, Black, Meredith & Martin (Walter B. Martin, Jr.), Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

The libellant, an American seaman, served on the respondent's vessel, the American Steamship "NATIONAL LIBERTY" from November 26, 1956, to March 2, 1957, when he was discharged from said vessel at Norfolk, Virginia, up-on the termination of a voyage. On March 8, 1957, libellant reported to the United States Public Health Service Hospital at Norfolk, Virginia, for examination and was admitted to that institution as an in-patient on March 18, 1957, for treatment for suspected tuberculosis. Libellant was discharged to an out-patient status on June 6, 1957, and remained an out-patient until August 25, 1959, when he was notified that he was discharged fit for duty as of August 19, 1959.

### DAMAGES FOR FAILURE TO PAY MAINTENANCE AND CURE

The evidence in this case justifies a finding that the respondent was derelict in its duty to pay maintenance. The libellant had forwarded to the claims and insurance manager for National Shipping and Trading Corporation an abstract of his clinical record indicating that libellant was admitted to the United Sates Public Health Service Hospital at Norfolk, Virginia, on March 18, 1957, and was discharged to an out-patient status on June 6, 1957. The records of the hospital reflect a strong probability of active tuberculosis. The only investigation conducted by the respondent was to interrogate the master and chief engineer, who stated that the libellant had never complained of any illness during his four months' service as a wiper on the SS "NATIONAL LIBERTY". It is admitted, however, that the master furnished the libellant a certificate to enter the Public Health Service Hospital upon libellant's discharge on March 2, 1957. Respondent made no effort to further investigate the status of libellant's claim, and apparently did not even bother to admit or deny the validity of his claim for maintenance. Such action on the part of the respondent would give rise to a claim for damages under Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368, providing that the failure to furnish maintenance has caused or aggravated an illness. In the present case, there is no evidence before the Court which would justify a finding that the failure to furnish maintenance caused

or aggravated the illness. I have examined the authorities submitted by proctor for the libellant, including The Troy, D.C., 121 F. 901, 906; Ran v. Atlantic Refining Co., D.C., 87 F.Supp. 853; and Murphy v. American Barge Line Co., 3 Cir., 169 F.2d 61, 64. While there is some statement in The Troy which could possibly be construed as an allowance of damages for failure to pay maintenance, it is clear that such allowance was limited to living expenses and some compensation for the suffering which libellant endured by reason of not having the care and attention called for under the circumstances of the case. Under the evidence before the Court at this time it appears that libellant actually earned more during his out-patient status than he had earned before signing on the vessel. There is no indication of any physical or mental suffering and, in the absence of provable damages, no allowance can be made to the libellant for this cause of action.

■ The evidence does show, and the Court finds that libellant was required to pay one-half of the amount recovered by way of maintenance to his proctor. This is undoubtedly a diminution of the total amount which should have been paid to libellant, but this Court knows of no authority which would justify the reimbursement of counsel fees through the guise of an allowance for damages incident to the failure to pay maintenance.

For the foregoing reasons, the claim for damages for failure to pay maintenance will be dismissed.

THE CLAIM FOR MAINTENANCE

■ At the request of libellant, the Court granted a hearing on an application for interlocutory decree to require the respondent to pay the maintenance alleged to be due said libellant. This hearing was held on February 25, 1959, and on May 12, 1959, the Court entered an interlocutory decree granting the libellant maintenance at the rate of $8.00 per day as specified in his union contract for the period beginning June 6, 1957 (the date of his discharge from the hospital as an out-patient) to and including February 18, 1959, but provided that the total amount should be mitigated by the net amount earned by libellant during said period while employed as the driver of a taxicab. The order further provided that respondent would be required to continue the payment of maintenance at the rate of $56.00 per week, subject to a credit for any sums earned by libellant by reason of his employment as aforesaid, until such time as the libellant reached the maximum state of recovery. Libellant contends that no credit should be given by reason of libellant's earnings during the time of his employment while an out-patient, but the weight of the authority appears to indicate to the contrary. The Court adheres to its previous view that respondent is entitled to a credit for the sums earned by libellant while an out-patient. It should be noted that libellant was allowed interest at the rate of 6% per annum for each week's maintenance which remained unpaid and, to this extent, the respondent was obligated to pay for its neglect in observing its duty to provide maintenance.

■ Proctors have stated that maintenance has now been fully paid to and including August 19, 1959. Libellant contends that he is entitled to maintenance for an additional six days, namely, August 20, 21, 22, 23, 24 and 25. The circumstances giving rise to this contention are that the libellant was examined at the hospital on August 19, 1959, but was not then notified that he was fit for duty. He was instructed to report back to the hospital on August 25. When he reported on August 25, the hospital then notified him that he would be discharged as fit for duty as of August 19, 1959. In the opinion of the Court libellant is entitled to the additional six days' maintenance, without interest, as libellant remained an out-patient while under orders to report back on a specific date. Furthermore, the factual situation presented in this case clearly shows that the hospital had examined the libellant on August 19, but had reached no conclusion as to his condition and the effect of the hospital's discharge as fit for duty was

substantially one of relating it back to the date of the final examination. This ruling is not to suggest that a seaman must be officially notified when he is fit for duty, but if the seaman is directed to report back at a later date, presumably for a further examination, the seaman has the right to assume that maintenance will be continued pending a final determination of his status.

Accordingly, a decree will be entered permitting the recovery of maintenance for the additional period of six days, less such sums as were earned by the libellant in his employment as a taxi operator.

## CAUSATION OF ORIGINAL ILLNESS

The evidence does not firmly establish that libellant suffered from active tuberculosis, but he undoubtedly had a condition which required treatment.

There is no credible testimony in this case pointing to any connection between the illness of libellant and the cause of same. There is no merit in libellant's contention that there existed any violation of 46 U.S.C.A. § 673, or any provisions of the union agreement. Assuming, without finding, that such violations did exist, there is no suggestion that the violations were associated with libellant's condition. The cause of action alleging that the respondent is liable for the illness is dismissed.

## THE CLAIM FOR WAGES

It is admitted that libellant was discharged and the voyage ended on March 2, 1957, at which time libellant was paid his wages in full. He now contends that, as a matter of discretion, he is entitled to wages for a reasonable period after the termination of the voyage. He relies upon The Michael Tracy, 4 Cir., 295 F. 680. It is urged that this authority stands for the proposition that, in some cases, wages are allowed beyond the time of the termination of the voyage. A close analysis of this decision points to the fact that libellant was allowed maintenance which was the equivalent of wages. Nor is there any support to libellant's contention in Seville v. United States, 9 Cir., 163 F.2d 296, 298, wherein it is stated that wages are payable "at least" so long as the voyage is continued. The matter is put to rest in Farrell v. United States, 2 Cir., 167 F.2d 781, in which the Court approves the allowance of wages to the end of the voyage. On certiorari to the United States Supreme Court, the majority of this Court held that the shipowner was obligated only for the voyage on which the ship was engaged when he signed on. See Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850. The claim for wages covering a reasonable period after the termination of the voyage is disallowed.

Proctors may use the views of the Court in preparing the findings of fact and conclusions of law. Costs will be assessed against the respondents.