Luis BLANCO, Libellant, Appellee,

v.

PHOENIX COMPANIA DE NAVEGA-
CION, S. A., Respondent, Appellant.

No. 8558.

United States Court of Appeals
Fourth Circuit.

Argued April 3, 1962.

Decided May 23, 1962.

Walter B. Martin, Jr., Norfolk, Va.
(Vandeventer, Black, Meredith & Martin,
Norfolk, Va., on brief), for appellant.

Sidney H. Kelsey, Norfolk, Va. (Ralph
Rabinowitz, Newport News, on brief),
for appellee.

Before SOBELOFF, Chief Judge, and
HAYNSWORTH and BOREMAN, Cir-
cuit Judges.

SOBELOFF, Chief Judge.

The principal question raised on this
appeal is whether a ship and her owner
may limit liability to a seaman under the
General Maritime Law by stipulating in
the contract of employment the maximum
monetary recovery for scheduled per-
sonal injuries. A subsidiary question
is whether, aside from such a contractual
limitation, the present libellant's re-
covery is excessive.

On September 29, 1960, Luis Blanco,
an able-bodied seaman of Spanish na-
tionality, was working aboard the S.S.
Fenix which flies the Liberian flag. She
had taken on a load of coal at Hampton
Roads, and while the No. 2 starboard
boom was being lowered to its cradle
preparatory to going out to sea, a defec-
tive gooseneck pin, which attached the
heel of the boom to the mast table, broke.
The boom was thus dislodged and caused
to fall and strike the libellant across the
legs. The right side of his body and
right leg were crushed between the boom
and an edge of a cable spool. After being
pinned for forty minutes he was finally
freed and removed to the hospital, but
because all the nerves and main blood
vessels and all but one muscle of his right
leg had been severed, the leg could not
be saved and was amputated four inches
below the hip joint. Infection set in
and a long period of drainage followed,
but after three months in the hospital
the seaman was sufficiently recovered to
be put on out-patient status. In addition

to losing his leg, the seaman suffered injury to his genitals.

Because of the high amputation it was necessary to equip him with a prosthesis which is strapped to his body. With crutches, Blanco is able to move about, but stump irritation prevents him from wearing the twenty pound, plastic and metal leg for more than three hours at a time. He can, of course, no longer do seaman's work, and the prospects of his finding other work in Spain are negligible. Now thirty-seven years old, he lives with his wife and child in a Spanish village whose inhabitants engage chiefly in farming and fishing. He could be trained to do work that requires no standing or walking, but the availability of such opportunities at his place of residence is doubtful. The nearest industry is located forty miles away.

■ Seeking indemnity for his injuries, the seaman filed in the admiralty court a libel in rem against the ship and in personam against her owner, Phoenix Compania de Navegacion, S.A. He claimed the benefits of the Jones Act, 46 U.S.C.A. § 688, and the General Maritime Law, and made the usual averments of negligence and unseaworthiness. Further, the seaman alleged that, while the owner was ostensibly a Liberian corporation, it was in fact controlled by United States citizens. To establish this, interrogatories were propounded to the owner which, rather than reveal the facts as to ownership, admitted that the libellant was entitled to the benefits of the statutory law of the United States.[1]

After taking depositions of members of the crew, which showed that Blanco's injuries were caused by the breaking of a defective gooseneck pin, the libellant moved for summary judgment on the issues of unseaworthiness and causation.[2] The shipowner did not resist, and the motion was granted.[3] There followed a hearing on the issue of damages, and an award was entered for $101,809.00.

On this appeal the contention is made that the judge erred in declining to enforce a provision of the ship's articles, which constituted the seaman's contract of employment, whereby the monetary recovery for the loss of a leg was limited to $1800.00.

"From time immemorial, seamen have been called the 'wards of admiralty,'"[4] and perhaps no other group is provided the protective care that courts of admiralty traditionally extend to them.[5] In Mr. Justice Story's classic statement:

"They are considered as placed under the dominion and influence of men, who have naturally acquired a mastery over them; and as they have little of the foresight and caution belonging to persons trained in other pursuits of life, the most rigid scrutiny is instituted into the terms of every contract, in which they engage. If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and un-

---

1. This admission foreclosed any problem as to whether this seaman is entitled to the benefits of the Jones Act. Compare Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Southern Cross S. S. Co. v. Firipis, 285 F.2d 651 (4th Cir. 1960).

2. Summary judgments in admiralty are authorized by a recent amendment of the Admiralty Rules, Rule 58, 28 U.S.C.A. (Supp. 1962).

3. It is well settled that a latent defect in a ship's equipment renders her unsea-

worthy. See, e. g., Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 545–549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S. Ct. 455, 88 L.Ed. 561 (1944).

4. Harris v. Pennsylvania R. Co., 50 F.2d 866, 868 (4th Cir. 1931).

5. For an excellent, short discussion of this development of the admiralty law, see, Norris, The Seaman as Ward of the Admiralty, 52 Mich.L.Rev. 479 (1954).

reasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable." Harden v. Gordon, 11 Fed.Cas. 480, 485 (No. 6047) (C.C.Me.1823).

Again, Mr. Justice Story has emphasized: "Whenever * * * any stipulation is found in the shipping articles, which derogates from the general rights and privileges of seamen, courts of admiralty hold it void * * * unless two things concur: First, that the nature and operation of the clause is fully and fairly explained to the seamen; and secondly, that an additional compensation is allowed, entirely adequate to the new restrictions and risks imposed upon them thereby." Brown v. Lull, 4 Fed. Cas. 407, 409 (No. 2018) (C.C.Mass. 1836).[6]

The ship argues, however, that these principles, authoritatively laid down over a century ago, should not be enforced. It urges that conditions have changed and that modern seamen no longer need the extraordinary protection afforded them in times past. The answer is twofold. First, the Supreme Court has shown not the slightest inclination to forsake these principles. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Garrett v. Moore-McCormack Co., 317 U.S. 239, 246–249, 63 S.Ct. 246, 87 L.Ed. 239 (1942).[7] Second, while there may be cogent reasons for enacting a compensation law for seamen, Congress has not seen fit to adopt such legislation or to interfere with the Supreme Court's interpretation of the law for the protection of seamen.[8]

On examination of the contract in the present case, its inequity is manifest. In return for the absolute right to recover negligible damages, the seaman surrendered his substantial right to recover full indemnity for any loss or damages suffered in consequence of the unseaworthiness of his ship. An admiralty court would be derelict in its duty were it to honor this agreement. We hold it invalid as a matter of law.

Moreover, certain decisions go further, strongly indicating that any attempt whatever by a ship to limit its liability to a seaman under the General Maritime Law is against public policy and ipso facto void, irrespective of the fairness of the terms of the agreement. This is the express holding of W. J. McCahan Sugar Refining & Molasses Co. v. Stoffel, 41 F.2d 651, 653–654 (3d Cir. 1930) (post-accident agreement that state workman's compensation shall be the seaman's sole remedy); [9] Schellenger v. Zubik, 170 F.Supp. 92, 93 (W.D.Pa. 1959) (agreement to accept state workman's compensation); Vitco v. Joncich, 130 F.Supp. 945, 950–952 (S.D.Cal.1955) (contract providing that seaman's right to wages ended if he became ill during the voyage; excellent collection of cases); Lakos v. Saliaris, 116 F.2d 440, 443–444 (4th Cir. 1940) (agreement modifying seaman's right to full wages at the end of the voyage contrary to United States statutory law); [10] Retzekas v. Vygla S.S. Co., 193 F.Supp. 259 (D.R.I.1960) (contract providing that

---

6. See also, The David Pratt, 7 Fed.Cas. 22, 24 (No. 3597) (D.C.Me.1839).

7. And see cases collected in Norris, The Law of Seamen 538–555 (1951).

8. While the day of "wooden ships and iron men" may have passed, this is no reason to impose on seamen the rigid and harsh rules of the common law. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408–409, 74 S.Ct. 202, 98 L.Ed. 143 (1953). For a contrary view, see, Lovitt, Things Are Seldom What They Seem: The Jolly Little Wards of the Admiralty, 46 A.B.

A.J. 171, 174 (1960); but see, Standard, Are the Admiralty's "Jolly Little Wards" Really So Privileged?, 46 A.B.A.J. 1323 (1960).

9. Cf. The Henry S. Grove, 22 F.2d 444, 446 (D.C.Md.1927); but cf. Bay State Dredging & Contracting Co. v. Porter, 153 F.2d 827, 832–833 (1st Cir. 1946) (criticizing the holding of the Third Circuit).

10. See Glandzis v. Callinicos, 140 F.2d 111, 114 (2d Cir. 1944).

personal injury claims of seamen shall be governed by Greek Law).[11]

These authorities are not without support in the Supreme Court. In Cortes v. Baltimore Insular Lines, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932), Justice Cardozo, after discussing the duty imposed by the law upon a ship to provide, as an incident of the employment, maintenance and cure to a seaman who falls ill during a voyage and to indemnify him for loss or damage caused by an unseaworthy condition, states categorically: "[G]iven the relation, no agreement is competent to abrogate the incident." Again, in Lauritzen v. Larsen, 345 U.S. 571, 589, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), though holding that the application of foreign law was proper in a suit between a foreign seaman and a foreign ship, the Court said: "We think a quite different result would follow if the contract [of employment] attempted to avoid applicable law * *."[12]

Literally interpreted, these cases suggest that the private compensation agreement in the present case would be unenforceable even if it afforded the seaman an adequate allowance for his concession. Here, however, we need not go so far, having concluded that the agreement is unenforceable for want of sufficient consideration.

█ The second issue raised by the appeal is that the damages awarded for pain, suffering, embarrassment and mental anguish are excessive and clearly erroneous and should not be permitted to stand under Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A. Of the total award of $101,809.00, the sum of $75,000.00 was to compensate for this element of damages.

The ship advances the argument that the cost of living is lower in Spain than in the United States, and, therefore, the award, though it might not be excessive if made to an American, greatly overcompensates the Spanish seaman. No comparative figures have been submitted; at all events we cannot say that this seaman has been overcompensated for the excruciating agony he endured while crushed against the cable spool, the pain and anguish of three months of hospitalization, and the discomfort, humiliation and emotional suffering resulting from his being disfigured and crippled for life.

Affirmed.

11. See Southern Cross S. S. Co. v. Firipis, 285 F.2d 651, 653–655 (4th Cir. 1960); Voyiatzis v. National Shipping & Trading Corp., 199 F.Supp. 920, 923–925 (S.D. N.Y.1961); Zielinski v. Empresa Hondurena de Vapores, 113 F.Supp. 93 (S.D. N.Y.1953).

12. See also, 45 U.S.C.A. § 55, made applicable to seamen's claims by 46 U.S.C.A. § 688. This section provides that: "Any contract, rule, regulation, or device what-

soever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *." Although it is arguable that the section would not prevent a limitation of liability under the General Maritime Law, as opposed to statutory liability, still the section does indicate that Congress, like the courts, is concerned about the inequality in bargaining of employer and employee.