819 So.2d 963 (2002)
Janine VAN MILL, Appellant,
v.
BAY DATA, INC., Appellee.
No. 4D01-131.
District Court of Appeal of Florida, Fourth District.
June 26, 2002.
*964 Nancy Little Hoffmann of Nancy Little Hoffman, P.A., Pompano Beach, David R. Canning and C. Robert Murray of George, Hartz, Lundeen & Fulmer, Coral Gables, for appellant.
Robert D. McIntosh and Alain E. Boileau of Adorno & Zeder, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
Appellant, Janine Van Mill (Van Mill) was a stewardess on the M/V Lady Hawke, a vessel owned by Bay Data, Inc. (Bay Data). During the course of her employment, she suffered an injury to her arm.[1]
When the captain became aware of Van Mill's injury, he drove her to the hospital for medical treatment and informed Bay Data's vice-president. The vice-president instructed the captain to keep him abreast of the situation, to call if Van Mill needed further medical attention and to make sure that she did not do any physical work on the trip back to Fort Lauderdale.
The doctor at the hospital x-rayed her shoulder, told her that it was very inflamed, prescribed anti-inflamatory medication, put her arm in a sling, and told her to perform only light duty work.
Van Mill claimed that, on the trip back to Fort Lauderdale, she continued to do her job and nothing changed. The captain, on the other hand, stated that the whole crew was on light duty for the following two weeks because there were no guests on board. In addition, Van Mill refused to keep her arm in the sling, declined the captain's offer to have her flown home, and insisted on continuing to work. Further, upon returning to Fort Lauderdale, she did not immediately seek medical attention and exacerbated the injury and allegedly also injured her other arm by agreeing to do maintenance work on the boat, including sanding and varnishing, while it was in dry dock.
Van Mill was ultimately diagnosed with lateral epicondylitis, commonly called "tennis elbow" and underwent surgery on both arms over a two-year period. Bay Data paid for the surgeries and also paid for Van Mill's maintenance, or living expenses, during that time. While she was relieved of the pain, she will always be limited in what she can do with her arms, cannot resume employment as a stewardess, and has not been able to find employment at a salary comparable to what she was earning on the Lady Hawke.
Van Mill filed suit against Bay Data seeking damages for her injuries under several theories. After two of the claims were settled, the case went to trial on the claim for negligence under the Jones Act,[2] the claim of unseaworthiness, and the claim of failure to provide prompt and adequate medical care. After hearing all of the evidence, the trial court entered a directed verdict on the failure to treat claim finding that, "She opted not to follow the directions. She returns to the ship. There's no apparent reason why the captain has to take any further action in my eyes insofar as this lady is concerned." The jury found in favor of Bay Data on the negligence and unseaworthiness claims.
The issue in this appeal is whether the trial court erred in directing a verdict in *965 favor of Bay Data on Van Mill's claim for failure to properly treat under the Jones Act. We hold that the trial court did err, and reverse and remand for a new trial on that claim.
At trial, although there was a factual dispute as to when either the captain or the first mate was made aware of Van Mill's injury, there was no dispute that once the captain learned of Van Mill's injury, he accompanied her to the hospital and initial doctor visit and, by calling Bay Data's vice president, set in motion the process of relieving Van Mill of her duties and flying her back to Fort Lauderdale. Van Mill declined the offer, however, and insisted on remaining on the ship, continuing to perform her job, and completing the tour. Further, upon arriving back in Fort Lauderdale, she delayed seeking follow-up medical care and even agreed to do additional work on the boat during the off-season.
Despite all of the evidence suggesting that Van Mill declined the captain's offers of assistance, ignored doctor's orders, and contributed to her injury, the law places a greater obligation on the captain to provide for crew members' welfare than it does on the crew members themselves. The extent of the captain's duty was discussed in Central Gulf S.S. Corp. v. Sambula, 405 F.2d 291, 300 (5th Cir.1968). There, the court referred to the case of The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904) where the captain did everything short of performing surgery to assist a crew member who had broken a leg and some ribs. Id. at 640. For several weeks following the injury, while the ship was at sea, the captain and other crew members nursed the young boy and his leg appeared to be healed. Id. Upon arriving in port and going to the hospital, however, the boy discovered that while his ribs had healed perfectly, the bones of his leg had not united; the leg ultimately had to be amputated. Id.
In a suit against The Iroquois' captain for breach of duty in failing to put into an intermediate port and procure the proper surgical attendance, the trial and appellate courts found in favor of the seaman. Id. On appeal to the supreme court, the court considered the extent of the captain's duty to the seaman and analyzed the situation as follows:
The real question in the case is: whether the master, knowing his ignorance of surgery, the serious nature of the libellant's injury, the poor accommodations for him in the forecastle, the liability of inflammation setting in, and of the bones not uniting, the fact that he was to be carried through the tropics, where, to an invalid confined in the forecastle the heat would be almost intolerable, he should not, even at the sacrifice of a week, have put into Valparaiso and left the libellant there in charge of the American consul. Upon the other hand: libellant made no complaint of his treatment; did not ask to be taken into an intermediate port, and, so far as appears, the master did not know that the wound was not healing properly. The fact that the ribs had already united probably induced him to believe that the leg had also healed, although a careful examination could not have failed to reveal the truth. We lay no stress upon the fact that the libellant did not ask to be taken into an intermediate port. He was a boy, largely ignorant of his rights and duties. The master was his legal guardian in the sense that it is a part of his duty to look out for the safety and care of his seamen, whether they make a distinct request for it or not.

Id. at 643 (emphasis added); see also O'Connell v. Interocean Mgmt. Corp., 90 F.3d 82, 83 (3d Cir.1996)(stating that, with regard to maintenance and cure, "[s]o *966 broad is the shipowner's obligation, that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility.").
The Jones Act did not alter the ancient maritime law enunciated in The Iroquois. See, e.g., Deisler v. McCormack Aggregates Co., 54 F.3d 1074 (3d Cir.1995) (quoting Cortes v. Baltimore Insular Line, 287 U.S. 367, 371-72, 53 S.Ct. 173, 77 L.Ed. 368 (1932))("This obligation for maintenance and cure is ... `imposed by the law itself as one annexed to the employment.... The duty ... is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties.'"). Thus, a captain or shipowner is required by law to insure the well being of a crew member whether or not the crew member requests such aid. In this case, Bay Data was not relieved of its responsibility to Van Mill simply because of her refusal of assistance or her failure to follow directions. It was, therefore, error for the trial court to direct the verdict in favor of Bay Data on this issue. We reverse and remand for a new trial on this issue.
REVERSED AND REMANDED.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] Van Mill's theory at trial was that the injury was caused by the fact that she was forced to assist with certain jobs and lift certain heavy and awkward equipment on the deck of the boat, which was not in her job description as a stewardess.
[2] 46 U.S.C. § 688.